UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

METROPOLITAN ST. LOUIS          )
SEWER DISTRICT,                 )
                                )
        Plaintiff,              )
                                )
    vs.                         )          Case No. 4:10-CV-2103 (CEJ)
                                )
U.S. ENVIRONMENTAL PROTECTION   )
AGENCY,                         )
                                )
        Defendant.              )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of the United States Environmental Protection Agency (EPA) for summary judgment. Plaintiff Metropolitan St. Louis Sewer District (MSD) has filed a response in opposition and the issues are fully briefed.

On March 11, 2010, plaintiff filed with the EPA a request for records, pursuant to the Freedom of Information Act (FOIA), 52 U.S.C. §§ 522 *et seq.* The records MSD seeks relate to a water quality standards determination the EPA issued on October 29, 2009, under the Federal Water Pollution Control Act (Clean Water Act), 33 U.S.C. §§ 1251 *et seq.* The EPA produced some records responsive to the request; it also withheld a number of records, claiming that they fell within the "deliberative process" exemption. Plaintiff's administrative appeals of the EPA's production are still pending.

## I.    Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in

the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

In a FOIA case, summary judgment is available to a defendant agency where "the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Missouri Coalition for the Env't Found. v. U.S. Army Corps of Eng'rs, 542 F.3d 1204, 1209 (8th Cir. 2008) (quotation in original; citations omitted). An agency may justify its claims of exemption through detailed affidavits, which are entitled to a presumption of good faith. Rugiero v. U.S. Dep't of Justice, 257 F.3d 534, 544 (6th Cir. 2001). Unless evidence contradicts the government's affidavits or establishes bad faith, the court' s primary role is to review

the adequacy of the affidavits and other evidence. Id. (citations omitted). "If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position." Id. (citations omitted).

## II. Background

The Clean Water Act requires the states to adopt water quality standards and submit them to the EPA for approval. Clean Water Act § 303(c), 33 U.S.C. § 1313(c). The Clean Water Act also gives the EPA the authority to propose new or revised water quality standards. § 303(c)(4)(B).[1]

In 2004, the EPA entered into a consent decree and settlement agreement with the Missouri Coalition for the Environment. Under the terms of the agreement, the EPA agreed to make determinations under § 303(c)(4)(B) regarding the water quality standards for a specific portion of the Mississippi River unless the Missouri Department of Natural Resources adopted and submitted acceptable standards to the EPA. In a series of actions beginning in October 2006, the EPA determined that new standards were necessary for separate segments of the Mississippi River. On October 29, 2009,

---

[1]Section 303(c)(4)(B) states:

The Administrator shall promptly prepare and publish proposed regulations setting forth a revised or new water quality standard for the navigable waters involved--
* * *
(B) in any case where the Administrator determines that a revised or new standard is necessary to meet the requirements of this chapter.

the EPA addressed the final item required by the settlement agreement and determined that new standards were necessary for the 28.6-mile segment of the Mississippi River that includes the St. Louis area.[2]  This determination is the subject of MSD's FOIA request.

The MSD request states in relevant part:

[W]e request the opportunity to review . . . records created and/or maintained by your agency related to the U.S. EPA's water quality standards determination under the Clean Water Act for the 28.6-mile segment of the Mississippi River [in the St. Louis area dated October 29, 2009].

We specifically ask for [email communications] with, from and within EPA Headquarters on this issue [and a]ll other records related to the . . . Determination. . .

The timeframe covered by this request is primarily from January 1, 2004 to present.  However, please be advised this request also includes any records reviewed, referenced or considered in the context of the above which may pre-date 2004.

* * *

Should any records be considered exempt from disclosure under FOIA, please provide a Vaughn Index itemizing each record or portion thereof which your agency considers exempt from disclosure, along with a statement for each record listed referencing the applicable exemptions justifying the refusal to release the records.

Def. Ex. A [Doc. 13-1].

---

[2]The Missouri Department of Natural Resources proposed "whole body contact recreation" standards for all but 142 segments of the Mississippi River.  The EPA made successive determinations that standards were necessary for these segments.  With respect to the final segment, the 28.6-mile portion in the St. Louis area, the EPA determined that new or revised water quality standards were necessary because the State had not provided sufficient information to support a determination that whole body contact recreation standards were not feasible.  In reaching its determination, the State had relied on a Use Attainability Analysis completed by MSD in 2005, in which MSD had determined that whole body recreation use could not be achieved.  Declaration of Sara Hisel-McCoy.  [Doc. 14-1].

EPA submits the declaration of Sara Hisel-McCoy, a director in the Office of Water of the EPA. [Doc. 14-1]. Ms. Hisel-McCoy states that in response to plaintiff's FOIA request, searches were conducted by the Office of Water, the Office of General Counsel, the Office of Water, Wetlands and Pesticide Division Region 7, the Region 5 Water Division, and the Region 7 Office of Regional Counsel. The search was coordinated by EPA employee Sharon Frey, who identified a group of approximately 20 former and current employees likely to have responsive records. The current employees searched their own records; staff searched the records of former employees. Ms. Frey supplied suggested search terms to locate electronically-stored documents. ¶ 16.[3] On June 10, 2010, EPA released over 1,000 records. Approximately 380 records were identified as exempt from disclosure under the deliberative process exemption. ¶10. It was subsequently discovered that the records of a former assistant administrator had not been searched. A review of these records resulted in a supplemental release of 40 documents; 11 additional documents were withheld in whole or in part. ¶ 17. The EPA submitted a <u>Vaughn</u> index[4] in conjunction with the release of documents.

### III. Discussion

---

[3]Citations to "¶" in this memorandum refer to paragraphs in Ms. Hisel-McCoy's declaration.

[4]A "<u>Vaughn</u> index" lists each document withheld by an agency and provides "reasonably detailed" information sufficient to enable a district court to determine whether it falls within an exemption provided by FOIA. <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1974). The parties here agreed that the EPA could submit a "coded" index. In a coded index, the agency breaks down its FOIA exemptions into subcategories, explains the nondisclosure rationale for each subcategory, and then correlates the subcategories to each document or portion withheld. <u>Maynard v. CIA</u>, 986 F.2d 547, 559 n.13 (1st Cir. 1993).

The Freedom of Information Act is intended "to provide wide-ranging public access to government documents." Missouri Coalition, 542 F.3d at 1208 (quoting Miller v. U.S. Dep't of Agric., 13 F.3d 260, 262 (8th Cir. 1993)). "[D]isclosure, not secrecy, is the dominant objective of the Act." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976). The Act permits access "to official information long shielded unnecessarily from public view" and is therefore "broadly conceived." Missouri Coalition, 542 F.3d at 1208 (quoting EPA v. Mink, 410 U.S. 73, 80 (1973)).

FOIA provides nine statutory exemptions to disclosure, found at 5 U.S.C. § 552(b). The exemptions are to be narrowly construed to ensure that disclosure, rather than secrecy, remains the primary objective of the Act. Id. The agency bears the burden of showing that a claimed exemption applies. Public Citizen, Inc. v. Office of Mgmt. and Budget, 598 F.3d 865, 869 (D.C. Cir. 2010). In this case, EPA relies on the "deliberative process" exemption found at 5 U.S.C. § 552(b)(5). Plaintiff argues that the EPA's Vaughn index is insufficient to show whether records were properly withheld under this exemption. Alternatively, plaintiff argues that even if the Vaughn index is adequate, the EPA has improperly applied the deliberative process exemption.

### A. The EPA's Vaughn Index

A Vaughn index may be used to determine whether the agency has discharged its burden under FOIA. Missouri Coalition, 542 F.3d at 1209. A proper Vaughn index

> provides a specific factual description of each document sought by the FOIA requester. Specifically, such an index includes a general description of each document's contents, including information about the document's creation, such as date, time, and place. For each document, the exemption claimed by the government is identified, and an explanation as to why the exemption applies to the document in question.

Id. at 1209-10 (quoting Crancer v. Dep't of Justice, 999 F.2d 1302, 1306 (8th Cir. 1993)).

Here, the parties agreed that the EPA would submit a "coded <u>Vaughn</u> index."

Def. Ex. G [Doc. 13-7 through 13-12].  The index consists of separate numbered

entries for each record that was withheld, *e.g.*, WH-1, WH-2, etc.  Each entry identifies

the subject of the record, generally in the form of the subject line of an email, the date

and time for the email or record, the author, the recipients, and any attachments.

Finally, the claimed basis for the exemption is identified, *i.e.,* "Ex[emption] 5 --

Deliberative Process Privilege."  In addition, each entry identifies a "subcategory" of

the privilege applicable to the particular record; *e.g.*, "I.E Post-briefing drafts and

deliberation," or "I.H Communications drafts and strategy."  The subcategories are

described in detail in Ms. Hisel-McCoy's declaration.

Plaintiff complains that the EPA's descriptions of some records and their

attachments are too vague or cryptic to determine the content.  For example, the

"subject" of WH-8 is listed as "Re: MS UAA."  It is assigned to subcategory "I.A Draft

maps and diagrams."  Ms. Hisel-McCoy explains in her declaration that this category:

> contains various draft maps reflecting numerous changes and revisions as well
> as e-mail records containing deliberations over various changes and revisions
> to these materials.  Information reflected on the maps includes a selection of
> natural and man-made features of the riverfront, information on location of
> reported river use, and other items of potential interest to the [water quality
> standards] determination decision-maker.

¶ 29.  She further explains that the withheld portions contain draft versions of visual

aids and that they contain "information selected by staff to highlight or emphasize

various geographic and non-geographic features" of the area.  ¶ 30.

The Court concludes that the EPA's <u>Vaughn</u> index, supplemented by Ms. Hisel-

McCoy's declaration, provides adequate information to satisfy the requirements of

<u>Missouri Coalition</u>.

## B.    <u>Exemption 5</u>

FOIA exemption 5 exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 incorporates "all normal civil discovery privileges," including the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege. Nat'l Day Laborer Org. Network v. U.S. Immigration and Customs Enforcement Agency, --- F. Supp. 2d ---, 2011 WL 2693655, at *5 (S.D.N.Y. July 11, 2011) (citation omitted). "The test under Exemption 5 is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." Id. (citing FTC v. Grolier, Inc., 462 U.S. 19, 26 (1983)). "Once a document is deemed exempt from disclosure pursuant to Exemption 5, there is no need for the court to consider the public interest in disclosure." Id. (quoting Sierra Club v. United States Dep't of Interior, 384 F. Supp. 2d 1, 29 (D.D.C. 2004)). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them in the Government." Dep't of Int. v. Klamath Water Users Protection Ass'n, 532 U.S. 1, 8-9 (2001) (internal quotations and citations omitted).

In order to fall within the deliberative process exemption, a document must be both predecisional and deliberative. State of Missouri ex rel. Shorr v. U.S. Army Corps of Eng'rs, 147 F.3d 708, 710 (8th Cir. 1998) (citing Assembly of State of Cal. v. U. S. Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992)). Plaintiff argues that defendant fails to satisfy both requirements.

### 1. "<u>Predecisional</u>"

Plaintiff asserts that the EPA has applied the deliberative process exemption to a number of records that are not predecisional. Case law regarding exemption 5 distinguishes between "predecisional memoranda prepared in order to assist an agency decisionmaker in arriving at his decision, which are exempt from disclosure, and postdecisional memoranda setting forth the reasons for an agency decision already made, which are not." <u>Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.</u>, 421 U.S. 168, 184 (1975). "A predecisional document is one which is designed to assist agency decisionmakers in arriving at their decisions and which contains the personal opinions of the writer rather than the policy of the agency." <u>Schorr</u>, 147 F.3d at 710. A "continuing process of agency self-examination" is not enough to render a document "predecisional." <u>Maricopa Audubon Soc. v. U.S. Forest Serv.</u>, 108 F.3d 1089, 1094 (9th Cir. 1997); <u>see also</u> <u>Tigue v. U.S. Dep't of Justice</u>, 312 F.3d 70, 80 (2d Cir. 2002) (distinguishing between predecisional documents and those that are "merely part of a routine and ongoing process of agency self-evaluation"). However, "the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared." <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 153 n.18 (1975). That is, although the government "must identify a specific decision to which the document is predecisional," it need not identify the actual decision that was made based on the document. <u>Gordon v. FBI</u>, 388 F. Supp. 2d 1028, 1037 (N.D. Cal. 2005). With these principles in mind, the Court turns to the specific categories of records plaintiff asserts are not predecisional.

**February 2010 emails**: The decision to set new water quality standards was announced on October 29, 2009. The EPA withheld three emails created in February 2010.[5] The emails were generated in response to a January 22, 2010 letter from the director of the Missouri Department of Natural Resources to the EPA, in which the State requested the opportunity to issue regulations in lieu of EPA issuing federal regulations. See Def. Ex. U. The Vaughn index assigns these emails to the subcategory of "Communications Draft and Strategy." Ms. Hisel-McCoy states that this category includes e-mail deliberations over the timing, form, content, and coordination of the communication materials supporting the public announcement of the [water quality standards] announcement. It also contains various draft documents of communication materials for both internal and external use."[6]  ¶ 57.

Plaintiff argues that, as a matter of common sense, the February 2010 emails are "post-decisional." It does not automatically follow, however, that records created after October 29, 2009, are post-decisional. See, e.g., Krikorian v. Dep't of State, 984 F.2d 461, 466 (D.C. Cir. 1993) (documents created after publication of article discussing how to respond to public reaction covered by exemption 5); Nat'l Right to Work Legal Defense and Educ. Found., Inc. v. U.S. Dep't of Labor, 2011 WL 6148661, at *4 (D.D.C. Dec. 12, 2011) (discussing "post-dated" documents); Judicial Watch, Inc. v. U.S. Dep't of Justice, 800 F. Supp. 2d 202, 218 (D.D.C. 2011) (post-decisional documents fall under deliberative-process privilege if they recount or reflect

---

[5]WH-387, WH-389, WH-390; See Def. Exs. U, V, and W [Docs. 21-1, 21-2, and 21-3].

[6]Ms. Hisel-McCoy also states that items in this category "predate the official announcement," which is plainly inaccurate when applied to these February 2010 emails. The Court does not believe that the inaccuracy in and of itself affects whether exemption 5 applies to these emails.

predecisional deliberations); Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (post-decision emails discussing how to respond to inquiries from press and Congress properly withheld under exemption 5).

The Court finds that the February 2010 emails satisfy the two requirements of exemption 5. First, they address internal agency deliberations about how to respond to a request for a change in policy from a state agency and thus are part of a predecisional process, albeit one that is separate from that leading up to the October 2009 decision. Second, Ms. Hisel-McCoy's declaration establishes that disclosure of the contents of the February 2010 emails would reveal information about the course of deliberations leading up to the October 29, 2009, decision.

**October 29, 2009 emails**: Plaintiff argues the EPA improperly withheld emails created on October 29, 2009,[7] the date of the water quality standard determination. The Vaughn index assigns these emails to subcategory "Communications drafts and strategy," which Ms. Hisel-McCoy describes as "deliberations over the timing, form, content, and coordination of the communication materials supporting the public announcement" of the water quality standards determination. "The records also contain internal debate with respect to the best means of communicating the decision to the public on a national and local scale, and the proper office to issue the announcement materials." ¶¶ 57-58.

Plaintiff argues that all available information suggests that the redacted content communicates the final decision and thus does not qualify under the deliberative process exemption. Ms. Hisel-McCoy's affidavit, which is entitled to a presumption of good faith, establishes that the content includes deliberations about the best means

---

[7]WH-370-372, 377 and 378.

to communicate the final decision.  The EPA was entitled to withhold emails written on October 29, 2009.

**Press releases**:  Plaintiff also argues that records consisting of press releases, talking points and "Q & A" are not properly classified as predecisional.[8]  These records are in the subcategory "Post-briefing drafts and deliberations,"[9] which Ms. Hisel-McCoy describes as discussion following the briefing of the decision-maker, ¶ 45, and "Communications draft and strategy," discussed above.

Plaintiff is correct as a general matter that communication documents that merely release a final decision are not predecisional.  But it does not follow that all press communications fall outside the deliberative process exemption.  See Fox News Network, LLC v. U.S. Dep't of Treasury, 739 F. Supp. 2d 515, 545-46 (S.D.N.Y. 2010) ("Although opinions and recommendations regarding press inquiries do not qualify as deliberations about substantive policy decisions, disclosure of the various drafts of the press release at issue here would reveal how Treasury's deliberations with respect to the underlying substantive policy progressed over the course of several days.").  Ms. Hisel-McCoy's declaration is sufficient to establish that the press-release records in this case also have deliberative, predecisional content.  The cases on which plaintiff relies do not support its contention that these documents were improperly withheld. Taxation With Representation Fund v. IRS, 646 F.2d 666 (D.C. Cir. 1981), did not

---

[8]Plaintiff cites the following records: WH-316-318, 320-323, 325-328, 330, 332, 337-339, 343, 346-348, 351-352, 366-368, and 400.

[9]Ms. Hisel-McCoy addresses "pre-briefing" and "post-briefing" records.  It appears that the director of the Office of Science and Technology, in the Office of Water of the EPA, briefed an unnamed Assistant Administrator for the Office of Water, who was the decision-maker for the water quality standards determination.  See ¶¶ 38, 41, 45.

address press communications. <u>Chesapeake Bay Found., Inc. v. U.S. Army Corps of Engineers</u>, 772 F. Supp. 2d 66, 73 (D.D.C. 2010), involved application of the attorney-client communication privilege, which is not at issue in this case. The Court finds that the EPA has adequately supported its contention that the records discussing communication with the press contain predecisional material.

## 2.    "<u>Deliberative</u>"

Plaintiff also asserts that many of the withheld records do not qualify as deliberative.

A document is deliberative if it is "'actually . . . related to the process by which policies are formulated.'" <u>Nat'l Day Laborer</u>, 2011 WL 2693655 at *5 (<u>quoting</u> <u>Nat'l Council of La Raza v. U.S. Dep't of Justice</u>, 411 F.3d 350, 356 (2d Cir. 2005). Factors used to determine whether a document is deliberative include "whether the document (i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." <u>Id.</u> (<u>quoting</u> <u>Grand Central Partnership, Inc. v. Cuomo</u>, 166 F.3d 473, 482 (2d Cir. 1999). The privilege does not extend to purely factual material or documents later adopted or incorporated into a final agency opinion. <u>Id.</u> (internal quotation and citations omitted). "The privilege also does not extend to materials related to the explanation, interpretation or application of an existing policy, as opposed to the formulation of a new policy." <u>Id.</u> (citation omitted).

Plaintiff first challenges the withholding of communications from superiors to subordinates. In support of this argument, plaintiff cites <u>Brinton v. Dep't of State</u>, 636 F.2d 600, 605 (D.C. Cir. 1980). The issue under discussion in <u>Brinton</u> was whether the

requested documents were "final opinions" and therefore outside the deliberative process exemption. As evidence that the documents were not final opinions, the court noted that the documents were authored by a subordinate, who had no authority to make final decisions. "This flow of advisory material is exactly opposite to the paradigm of 'final opinions,' which typically flow from a superior with policy-making authority to a subordinate who carries out the policy." Id. The fact that superiors are more likely to have policy-making authority does not establish that all communications from superiors to subordinates consist solely of final opinions. The Court cannot say, categorically, that all the communications that originated with superiors fall outside the deliberative process exemption.

Plaintiff also notes that an employee's communication is no longer exempt once an agency adopts it as its own. An agency may be required to disclose a document otherwise entitled to protection under the deliberative process privilege if the agency has chosen "expressly to adopt or incorporate by reference [a] . . . memorandum previously covered by Exemption 5 in what would otherwise be a final opinion." La Raza, 411 F.3d at 356-57 (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 161(1975)) (alterations in original). An agency must expressly adopt a predecisional document as a final decision in order to waive the deliberative process exemption. Casad v. U.S. Dep't of Health and Human Services, 301 F.3d 1247, 1251 (10th Cir. 2002). There is no contention here that the EPA expressly adopted any of the withheld documents.

Plaintiff next argues that the EPA has improperly withheld records that contain purely factual information. The deliberative process exemption does not apply to materials that are purely factual. See Mink, 410 U.S. at 87-88 (exemption 5 does not

protect "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context.").

**Fact Sheet**: Record WH-250 is an email entitled "MSD facts," which EPA redacted almost completely. The Vaughn index places this record in the subcategory of "Pre-briefing drafts and deliberations." Plaintiff argues that the title suggests that it contains facts and thus is not deliberative. The title alone is not sufficient to overcome the presumption of good faith which is afforded to the agency's justification for the exemption.

**Revisions**: Record WH-350 and nine replies are entitled "edits to the Miss river fact sheet" and are assigned to subcategory "Communications drafts and strategy."[10] Plaintiff argues that EPA must disclose these records if they contain facts that were ultimately adopted into the final fact sheet. A document does not become nondeliberative if facts are included in the deliberations.

Plaintiff identifies nine other records[11] that it claims appear to address revisions of WH-358, which the EPA inadvertently released to plaintiff. Plaintiff characterizes WH-358 as a purported fact sheet and redline edits lacking any deliberative discussion in the form of opinion or recommendations relating to the October 29, 2009 decision. Plaintiff seeks disclosure of all iterations of WH-358 "to the extent they do not relate to recommendations for the [October 29, 2009] decision." Drafts and revisions of text may expose the development of agency thinking before the final product is released and thus can be deliberative.

---

[10]WH-350, 353, 359-365, and 369.

[11]WH-270, 271, 284, 291, 292, 295, 296, 335, and 348.

**Maps**:  Plaintiff next challenges EPA's decision to withhold maps of St. Louis and the Mississippi River.  According to Ms. Hisel-McCoy, "[i]nformation reflected on the maps includes a selection of natural and man-made features of the riverfront, information on location of reported river use, and other items of potential interest" to the decision-maker."  ¶ 29.  The maps were prepared prior to briefing officials who were responsible for making the water quality standard determination.   ¶ 30.  Defendant argues that disclosure of the maps and the selection of natural features would reveal the deliberative process.  The Court applies the presumption of good faith to which the agency is entitled and determines that the maps fall within the deliberative process exemption.

### 3.    Segregable information

The focus in a FOIA action is on the information sought, not the documents themselves.   Missouri Coalition, 542 F.3d at 1211-12 (citation omitted).   "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).  The withholding of an entire document by an agency is not justifiable simply because some of the material therein is subject to an exemption. Missouri Coalition, 542 F.3d at 1212 (citation omitted).  Rather, non-exempt portions of documents must be disclosed unless they are "inextricably intertwined" with exempt portions.  Id.  The agency has the burden to show that the exempt portions of the documents are not segregable from the non-exempt material.  Id.

Defendant states that almost no document was withheld in full; the majority of documents in the Vaughn index were redacted in part, leaving enough information from which it is possible to infer the general substance of the withheld information.  For

each subcategory in the index, defendant has provided the Court with a sample record that shows where redactions were made. For example, the subcategory "WQS scheduling" consists of emails containing staff opinions and recommendations regarding the timing of different phases of the water quality standards determination, including data gathering, data analysis, and briefing. ¶ 49. Record WH-216 is an email and response. Def. Ex. M [Doc. 13-18]. The original email is entitled "MS River St. Louis Determination -- Briefing Ephraim Next Week." Several portions of the email have been redacted; the remaining sentences address possible meeting times. According to Ms. Hisel-McCoy, the redacted portions contain a summary of the status of the schedule, possible options for proceeding, and questions regarding alternatives for coordinating the EPA's activities in order to meet deadlines. ¶ 52. She describes the redacted information in this category as "candid discussion of staff progress . . ., how it relates to the Agency's obligations under the settlement agreement with [the Missouri Coalition] and the prioritization and organization of Agency resources to meet those obligations." Based on its review of the declaration and exhibits, the Court finds that defendant has met its burden to show that exempt portions of the records are not segregable from non-exempt portions.

In conclusion, based upon its review of record, the Court finds that the defendant agency has fully discharged its duties under FOIA and is entitled to summary judgment on plaintiff's claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. #12] is **granted**.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of March, 2012.